# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03-1118 | **DATE** | DEC 0 1 2003 |
| **CASE TITLE** | Dwyer v. Unum Life Insurance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) [Other docket entry] Unum's motion to dismiss is granted and Dwyer's jury demand is stricken [R. 13-, 13-2, 17-1, 17-2]. Dwyer's First Amended Complaint is dismissed without prejudice with leave to file a Second Amended Complaint alleging causes of action under ERISA by December 18, 2003. Unum shall until January 8, 2003 to answer or otherwise plead. No extensions will be granted. Unum's first motion to strike is denied as moot. [R. 5-1]. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 0 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 23 |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 03 NOV 31 AM 9:26 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH J. DWYER, | )<br>) |
| Plaintiff, | )<br>) Case No. 03 C 1118<br>) |
| v. | ) Judge Blanche M. Manning<br>) |
| UNUM LIFE INSURANCE COMPANY, OF AMERICA and UNUMPROVIDENT CORPORATION, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DOCKETED**
**DEC 0 1 2003**

## MEMORANDUM AND ORDER

In his First Amended Complaint, Plaintiff Joseph J. Dwyer brings this diversity action alleging four Illinois state law claims premised on his entitlement to disability benefits under an insurance policy issued by the defendants, Unum Life Insurance Company and UnumProvident Corporation (collectively "Unum"). Unum filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the exclusive means by which Dwyer may bring this action is under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, and therefore, Dwyer's state law claims are preempted. In addition, Unum moves to strike Dwyer's request for a jury trial because claimants who seek benefits under ERISA are not entitled to a trial by jury. For the following reasons, Unum's motions are granted.

### I. STANDARD

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construe all allegations liberally, and view them in the light most favorable to the plaintiff. *See Hickey v. O'Bannon*, 287 F.3d

656, 657-58 (7th Cir. 2002). When considering a motion to dismiss, this court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *See Hickey*, 287 F.3d at 657.

## II. BACKGROUND

Assuming the truth of the facts as alleged in the First Amended Complaint, Dwyer, a commodity trader at the Chicago Board of Trade ("CBOT"), sustained a back injury that prevented him from returning to work full-time. Dwyer notified Unum of his condition and timely filed a claim for benefits under his Long Term Disability Policy ("LTD Policy"). His treating physician confirmed that, as a result of his injury, Dwyer was unable to perform the duties of his occupation and was entitled to disability benefits. Unum issued the LTD Policy to Shatkin, Arbor, Karlov & Co. ("Shatkin Arbor"). Dwyer alleges that Shatkin Arbor is a clearing firm and not his employer. Dwyer also alleges that he is self-employed.

After filing his disability claim with Unum, Dwyer received disability payments under his LTD Policy for 30 months. In September 2002, Unum terminated Dwyer's disability payments because the insurer concluded that electronic trading allowed Dwyer to be "gainfully occupied" as defined by the policy. Based on Unum's termination of his disability payments, Dwyer brings four Illinois state law claims in his First Amended Complaint, including: (1) a claim for declaratory, injunctive, and other relief for monthly disability benefits; (2) vexatious and unreasonable delay in the handling of his claim under the Illinois Insurance Code, 215 ILCS

2

5/155; (3) common law fraud; and (4) violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/10.

## III. DISCUSSION

Unum argues that Dwyer's LTD Policy was part of an "employee welfare benefit plan" and Dwyer is a "beneficiary" or "participant" as defined by ERISA. As such, Unum contends that ERISA preempts Dwyer's state law claims. Dwyer, on the other hand, asserts that because he is not an employee of Shatkin Arbor, the lack of an employment relationship takes his claims out of ERISA's purview.

### A. ERISA

#### 1. Employee Welfare Benefit Plan

Although Dwyer does not specifically dispute that his LTD Policy is an "employee welfare benefit plan" under ERISA, the court must address this issue because ERISA only applies to plans defined as such under the statute. *See Ed Miniat, Inc. v Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1987). An insurance plan must consist of the following five elements to be defined as an "employee welfare benefit plan" (1) a plan, fund, or program; (2) maintained or established; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, death, disability, unemployment or vacation benefits, apprenticeship or other benefits and programs; and (5) to participants or their beneficiaries. *See id.*; 29 U.S.C. § 1002(1)(A). Courts construe the definition of "employee welfare benefit plan" broadly. *See Brundage-Peterson v. Compcare Health Servs. Ins., Corp.*, 877 F.2d 509, 511 (7th Cir. 1989).

First, the parties do not dispute the plan at issue – Dwyer attached the LTD Policy to his

3

First Amended Complaint. Second, Shatkin Arbor meets the definition of "employer" for purposes of establishing and maintaining an "employee welfare benefit plan" under the second element. Section 3(5) of ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer", and Section 3(9) adds that the "term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." *See* 29 U.S.C. §§ 1002(5), (9). In fact, in a case similar to Dwyer's, another court in this district concluded that a trading company acted as an employer that established and maintained long term disability insurance under which a self-employed CBOT trader was a participant. *See, e.g., Ruttenberg v. United States Life Ins. Co.*, No. 01 C 8200, 2003 WL 21003719 at * 2-3 (N.D. Ill. May 1, 2003).

Shatkin Arbor also established and maintained the LTD Policy under which Dwyer brings this lawsuit. Contracting with Unum for the LTD Policy, defining which groups are eligible under the plan, performing the administrative functions as the plan administrator, and setting limitations, such as the waiting period before plan eligibility, support the conclusion that Shatkin Arbor has established and maintained the policy. *See Brundage-Peterson*, 877 F.2d at 510. In addition, "[a]n employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." *Id.* at 511.[1] This is exactly what Shatkin Arbor has

---

[1] ERISA's "safe harbor" regulation provides that an "employee welfare benefit plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:

(1) No contributions are made by an employer or employee organization;

4

done – contracted with Unum for a group plan and designated employees eligible to enroll.

It is undisputed that the Dwyer's policy provides long term disability benefits fulfilling the fourth element of an "employee welfare benefit plan." Under the fifth element, the plan provides for the eligible groups who may participate in the plan, including both permanent full-time employees and traders in active employment. (Am. Compl. Ex. A, at 6, 14). Finally, the LTD Policy delineates a participant's rights under ERISA. (Am. Compl. Ex. A, at 46-49). Accordingly, the LTD Policy is an "employee welfare benefit plan" governed by ERISA. The court now turns to whether Dwyer was a beneficiary or participant under the plan.

### 2. Beneficiary & Participant

Dwyer contends that his claims are not governed by ERISA because he is not an employee of Shatkin Arbor, but instead is self-employed. Dwyer's status as an employee, however, is not the determinative factor under the policy. The LTD Policy unequivocally sets forth the groups eligible under the plan – permanent full-time employees and traders in active employment. Dwyer was a trader in active employment, and thus eligible for coverage under

---

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*See* 29 C.F.R. § 2510.3-1(j).

5

LTD Policy. Because only participants, beneficiaries, or fiduciaries may sue under a plan governed by ERISA, *see* 29 U.S.C. § 1132(a), it does not stand to reason that once Dwyer chose to participate in this group plan governed by ERISA and gain benefits from it, he should be free from ERISA's limitations because he claims he was not an employee of Shatkin Arbor.

Accordingly, the pertinent inquiry is whether Dwyer is a "beneficiary" or "participant" of the LTD Policy under which he has brought this lawsuit. *See Ed Miniat, Inc.*, 805 F.2d at 734. A beneficiary is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *See* 29 U.S.C. § 1002(8); *Metropolitan Life Ins. v. Johnson*, 297 F.3d 558, 563 (7th Cir. 2002). A participant is an "employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." *See* 29 U.S.C. § 1002(7); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003). For jurisdictional purposes, a "participant" or "beneficiary" includes anyone with a colorable claim to benefits under the plan. *See Berger*, 338 F.3d at 763; *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir. 1997).

By terms of the LTD Policy, Dwyer is a beneficiary and a participant under the plan. Dwyer received disability payments and filed this lawsuit seeking continued payments under the policy; therefore, he was entitled to benefits under the plan. More importantly, by filing this lawsuit Dwyer implicitly concedes that he has a colorable claim to benefits under the policy. *See Berger*, 338 F.3d at 763; *Riordan*, 128 F.3d at 552.

6

Dwyer argues that because there are two categories of claimants, *i.e.*, permanent full-time employees and traders in active employment, his claims are not subject to ERISA because the LTD Policy contemplates multiple lines of coverage. Under the Summary of the Plan Description, however, the policy has one policy number, one plan administrator, one taxpayer identification number, and one ERISA plan number, and thus there is one policy for two groups eligible to participate in the plan. (Am. Compl. Ex. A, at 43). Indeed, it is not uncommon for insurance policies to have multiple groups eligible for coverage. *See, e.g., Ruttenberg v. United States Life Ins. Co.*, 2003 WL 21003719 at * 3 (four groups eligible under long term disability plan).

Because Dwyer's plan is an "employee welfare benefit plan" and Dwyer seeks disability payments as a "participant" and "beneficiary", ERISA governs his claims. As such, the court turns to whether his Illinois state law claims are preempted by ERISA.

## B. PREEMPTION

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *See* 29 U.S.C. § 1144(a); *see also Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141, 146 (2001) ("this broadly worded provision is 'clearly expansive'"). In construing ERISA's preemption language, the United States Supreme Court has held that a court must enforce Section 514(a) when its "inquiry must be directed to the plan" or when a plaintiff's cause of action "conflicts directly with an ERISA cause of action." *See Ingersoll-Rand, Co. v. McClendon*, 498 U.S. 133, 139 (1990). The Supreme Court has further determined that a state law may "relate to" an ERISA plan, and thus be preempted, even if such law is of general application and has only an indirect effect on the plan. *See Shaw v. Delta Air*

7

*Lines*, 463 U.S. 85, 98-99 (1983). A state law claim "relates to" an ERISA plan if it has a connection with or reference to the plan. *See id.* at 96-97.

Although ERISA unequivocally states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan", Congress has enacted an "insurance savings clause" which provides that a state law is not preempted if it regulates insurance. *See* 29 U.S.C. §1144(b)(2); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-49 (1987). In *Pilot Life*, the Supreme Court set forth two considerations for determining if the insurance savings clause applies to a state law. First, courts determine whether common sense suggests that the law at issue regulates insurance. *See id.* at 47-48. Second, courts may consider the "business of insurance" test from the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, which consists of three factors: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *See id.* at 48-49 (citations and quotations omitted). Recently, the United States Supreme Court made a clean break from the McCarran-Ferguson factors in determining when a state law regulates insurance. *See Kentucky Ass'n of Health Plans, Inc. v. Miller*, 123 S.Ct. 1471, 1479 (2003). In doing so, the Court clarified the relevant requirements: (1) the state law must be specifically directed toward entities engaged in insurance; and (2) the state law must substantially affect the risk pooling arrangement between the insurer and insured. *See id.*

Under Count I, a claim for declaratory and injunctive relief, Dwyer alleges "Plaintiff is legally entitled to receive monthly benefits under the Policy and is in need of this Court's protection because of defendant's termination of benefits under the Policy." (Am. Compl. ¶ 40).

8

In essence, Dwyer is seeking benefits under the plan. Because the existence of Dwyer's LTD Policy is a critical factor in establishing liability under this claim and this court's "inquiry must be directed to the plan", his first claim is preempted. *See Ingersoll-Rand*, 498 U.S. at 139-40. In fact, Dwyer concedes "If this Court concludes that ERISA applies, the only count to be preempted would be Count I."

Count II is based on Section 155 of the Illinois Insurance Code, in which Dwyer alleges that Unum's actions amount to the vexatious refusal to pay benefits under his LTD Policy. Dwyer argues that this claim is not preempted by ERISA, and if it is preempted, the "insurance savings clause" applies. This court has previously rejected the same argument. *See Lutheran General Hosp., Inc. v. Massachusetts Mut. Life Ins. Co.*, No. 95 C 2504, 1996 WL 124449, at *4 (N.D.Ill. March 12, 1999) ("Section 155 does not regulate the substantive content of insurance policies, but merely regulates the procedural aspects of claims processing by providing certain remedies in the event of vexatious insurance practices") (citation and quotations omitted). In *Lutheran General*, this court concluded that because Section 155 does not regulate content, it does not affect the transfer or spread of a policyholder's risk and is not an integral part of the policy relationship between the insurer and the insured, thereby failing the former "business of insurance" consideration. *See id.* Dwyer has not given this court any reason to decide this issue differently, whether under the guidance of the McCarran-Ferguson factors or the modified considerations as explained by the Supreme Court in *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 123 S.Ct. 1471, 1479 (2003).

In fact, although the Seventh Circuit has not addressed this issue, other courts in this district have also rejected this argument that claims brought under Section 155 of the Illinois

Insurance Code fall under the "insurance savings clause." *See, e.g., Casey v. Unum Life Ins. Co.,* No. 01 C 5419, 2002 WL 31356453, at *3-5 (N.D.Ill. Oct. 17, 2002); *Dobner v. Health Care Serv. Corp.,* No. 01 C 7968, 2002 WL 1348910, at *4 (N.D. Ill. June 19, 2002); *Cencula v. John Alden Life Ins. Co.,* 174 F.Supp.2d 794, 799-800 (N.D.Ill. 2001); *Gawrysh v. CNA Ins. Cos.,* 978 F.Supp. 790, 793 (N.D.Ill. 1997). Therefore, ERISA preempts Dwyer's claim based on Section 155 of the Illinois Insurance Code.

In Count III, based on common law fraud, Dwyer alleges "Defendants have refused to pay the full benefits due to and owing Mr. Dwyer under the terms of the Policy." (Am. Compl. ¶ 64). Again, Dwyer is seeking benefits under the policy, albeit through a common law fraud claim. Because the existence of Dwyer's policy is an important factor in establishing liability under Count III, and thus this court's inquiry would include reviewing the policy, this claim "relates to" an ERISA plan. *See Ingersoll-Rand,* 498 U.S. at 139-40. As such, ERISA preempts this common law fraud claim.

Count IV is based on the Illinois Consumer Fraud and Deceptive Practices Act. The Seventh Circuit has held that claims brought under the Consumer Fraud Act that relate to an ERISA employee benefits plan are preempted. *See Anderson v. Humana, Inc.,* 24 F.3d 889, 892 (7th Cir. 1994). In *Anderson,* the court reasoned that the Consumer Fraud Act does not regulate the methods of pooling risks, and thus does not fall under the insurance savings clause. *See id.* (Consumer Fraud Act does not regulate insurance within the meaning of ERISA); *see also Kentucky Ass'n of Health Plans, Inc.,* 123 S.Ct. at 1479 (state law must substantially affect risk pooling to be deemed law that regulates insurance). Accordingly, ERISA preempts this claim.

### C. JURY TRIAL

Dwyer's request for a jury trial is stricken because there is no right to a trial by jury under ERISA. *See Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998) (conclusion based on ERISA's equitable antecedents).

### IV. CONCLUSION

For the foregoing reasons, Unum's motion to dismiss is granted and Dwyer's jury demand is stricken [R. 13-1, 13-2, 17-1, 17-2]. Dwyer's First Amended Complaint is dismissed without prejudice with leave to file a Second Amended Complaint alleging causes of action under ERISA by December 18, 2003. Unum shall until January 8, 2003 to answer or otherwise plead. No extensions will be granted.

DATE: DEC 0 1 2003

Blanche M. Manning
United States District Judge